06-1360 Applied Companies, Inc. v. Secretary of the Army Mr. Jones Thank you, Your Honor. May it please the Court. Twelve years ago, within two weeks of learning that the government had made a mistake in its estimates for this requirements contract, this contractor submitted a claim for quote, under-absorbed indirect costs based on phantom quantities of the government's original contract estimate. The claim was submitted and certified and is discussed, including the language I quoted about the quantification of the claim, in the findings of the Armed Services Board of Contract Appeals, in the first appeal in this case, the 01-1 BCA. That claim was submitted before the contract was terminated for convenience of the government, well before. The claim was denied by a contracting officer and appealed to the ASBCA. It has never been decided by the ASBCA. It has never been decided or even addressed by this Court. What happened was the ASBCA bypassed that claim. It said in dicta in its entitlement decision, what this contractor is entitled to recover is anticipatory profits. It didn't discuss the under-absorbed indirect burden costs. So, Counsel, in the first Board opinion, there was no determination on damages. Is that correct? That's correct. That was an entitlement decision. And then there was a Federal Circuit appeal where three of my colleagues went into great detail, espousing in an advisory nature what ought to happen with regard to damages in this case. Yes, that's one way to characterize that decision. Is that dicta? Is that dictum? The ASBCA's reference to anticipatory profits was definitely dictum. It was so described in this Court's decision on appeal of the ASBCA's decision. And yes, we feel that this Court's decision discussing the possibility of an equitable adjustment on goods delivered, which had not been delivered, was also dictum. But that isn't necessary to the resolution of the case we're now presenting here. We are accepting the notion in this Court's previous decision in this case that the proper measure of damages is not anticipatory profits. However, after the ASBCA's decision in this case, after the Court's decision in this case, the Court decided, hush. And the Court in that case, for the same breach, approved the award of, again I quote, unrecouped fixed overhead and G&A costs. With that decision, under that law, applied original 1994 claim for a measure of damages measured by under-absorbed indirect overhead costs was viable and it was correct. The ASBCA decision that we are appealing here is wrong. This Court did not previously decide that the contractor is entitled to recover zero on a claim for burden costs. To the contrary, what this Court, in its amended decision, not in its original decision, in its amended decision, on reconsideration said, was contractor can't recover anticipatory profits, but then it specifically remanded to the ASBCA any other issues related to the termination for convenience claim. Didn't it say you couldn't get, not just that you couldn't get anticipatory profits, but that you couldn't get anything if you had not delivered any actual cylinders? No. Other than what you might get under the termination for convenience clause? No, that's not what it says. It says we suggest a remedy according to the Everett Plywood case, an equitable adjustment to goods delivered. But if you didn't deliver any goods, you can't get that remedy. And that's certainly so. It doesn't discuss in any way the remedy or the quantification of damages based on under-absorbed fixed overhead costs, which is the remedy or the measure of damages discussed and affirmed in Highshear. But in Highshear, didn't Judge Shaw go into detail on this issue? I mean, he spent pages distinguishing applied, and it seemed to me that the basis for that distinguishing was that no cylinders had been delivered and applied. As I read Judge Shaw's opinion in Highshear, commenting on his opinion in Applied Companies, he is saying the Court of Federal Claims in Highshear didn't award any anticipatory profits, and in Applied Companies, we said that a contractor in these circumstances can't recover anticipatory profits. So even if the Court of Federal Claims was wrong in the basis on which it arrived at that decision, which was failed proof, as a matter of law, it was correct. That, I believe, is the substance of the Highshear discussion of Applied Companies. There's certainly no discussion in Highshear or the previous Applied Companies decisions of whether applied damages can be measured in accordance with its original claim for under-absorbed fixed burden. But, as I said, the Federal Circuit's decision in the previous case, and its mandate in the case, concludes with a remand to the ASPCA to consider any issues remaining in connection with Applied's termination for convenience settlement proposal, which was at that time a claim. Now, what are the facts? Where did Applied's claim for its unreimbursed, its unrecurred burden cost reside when the Federal Circuit issued that mandate? I can tell you that because the Board found the facts on that, and I would like to ask the liberty to read them. These are from the Board's original decision on entitlement in 01-1 BCA. Finding 16, by letter dated August 29, 1994, the government notified Appellant that it had made a mistake in its requirements estimates. Finding 18, by letter dated September 13, 1994, Appellant submitted a revised price including $615,000 in quote, under-absorbed indirect costs. That was September 13, 1994. Finding 22, Applied certified its September 13, 1994 request by letter dated January 23, 1995. Finding 24, the contract was terminated for convenience on 6 February, 1995. In its letter of termination, the government stated that it would take no further action on Appellant's September 13, 1994 claim and requested that Appellant submit a termination proposal under which the claim would be considered. So that claim resided in, it was one of the pending issues of Applied's termination claim at the time. This court remanded to the Board to consider those issues. It was a live, well, it has never been decided. And we ask, we say the Board was wrong in saying that this court previously decided it or precluded it. This court didn't address it. Counsel, one thing I'm concerned about is in High Shear, I've now found the language that I was thinking of before when I asked my previous question, which is the court stated, we stated, this is in High Shear, referring to Applied, we stated that if it was determined any cylinders were delivered to DLA, Applied should have the opportunity to establish it was entitled to an equitable adjustment in the price of the cylinders. However, we continued, if it was determined that no cylinders were delivered to DLA, then Applied was limited to the remedy available to it under the contract's termination for convenience clause. I'm concerned, you know, how are we supposed to make an equitable adjustment in the form of unabsorbed overhead when our prior precedent says this? Well, okay, first of all, I don't think there's prior precedence on unabsorbed overhead, recovering unabsorbed overhead as a result of a breach. Isn't that an equitable adjustment? Is the recovery of unabsorbed overhead an equitable adjustment? No. It's not? No, no, it's damages. It's damages and the claim for damages quantified out of the unabsorbed overhead was part of Applied's termination proposal and it was part of that proposal because the government asked that it be part of that proposal. And it has never been adjudicated. The Board is wrong in saying what the Board said in this case is that the decision of the Federal Circuit was that Applied is limited to recovering the costs that are allowed by the termination for convenience clause. That's not correct. The court said we remand for determining of remaining issues in connection with the proposal. And at the time, the facts before the court were that that proposal included the claim that we are asking to effectuate here so that this contractor recovers something and not nothing as a result of this breach. Thank you, Mr. Jones. Ms. Miller. Good afternoon, Your Honors. May it please the Court, we respectfully request that the Court affirm the decision of the Armed Services Board of Contract Appeals. The Board's decision is supported by substantial evidence and is correct as a matter of law. The Board properly held that Applied is not entitled to recover unabsorbed overhead. The Board first applied the Court's 2003 decision and determined that because Applied had not delivered any cylinders under the contract, its damages were limited to the termination for convenience clause. That clause allows for a contractor to recover costs incurring performance of a contract up to the time of termination. Indeed, Applied was paying $295,000 by the contracting officer for costs incurred up to the time of termination. $133,000 of that was for general and administrative expenses. The Board then applied this Court's decision in Nikon that while a contractor can in certain circumstances recover its unabsorbed overhead as part of a termination for convenience proposal, there must first be government-caused delay of uncertain duration. Was the Board bound to follow our prior decision in Applied? I want to kind of start where I started with the other counsel, which the Board never addressed damages or the quantum of damages other than one sentence about the potential for anticipatory profits. And the Federal Circuit talked at length about detailed length about the various ways in which the plaintiff in this case may or may not recover damages. Is that all dictum? We don't believe it is, Your Honor. At least half of this Court's 2003 decision was devoted to guidance, as this Court named it. Is guidance dictum? Perhaps it is, perhaps it is not. But this Court cited its own case law, and the Board would have been remiss not to have followed that guidance or whatever the Court wants to call it. The Court emphasized strenuously what Applied was allowed to get on remand and what it wasn't. And should this Court find that its decision was incorrect and the Board shouldn't have followed it, or that the Board's reasoning is faulty, that's one thing. But the Board would have been remiss in not following this Court's guidance. That guidance was based on Federal Circuit case law and other cases as well. So the Board was correct. And it is a well-settled principle that before any contractor can recover unabsorbed overhead, whether it's deemed damages, termination for convenience cost, or whatever, no matter what it's called or whatever umbrella it's gained under, they must show that there's been government-caused delay of uncertain duration. And that is the linchpin in this case. The contractor cannot show, they haven't even alleged that there's any government-caused delay, not to mention of uncertain duration. And that is the controlling fact in this case. In High Shear, was there government-caused delay? In High Shear, it wasn't clear from the opinion whether there was or not. But there are some distinctions with High Shear. In High Shear, the government never invoked the termination for convenience cost at all in that contract. Secondly, in High Shear, as with the PLC spare parts, both contractors had made deliveries under those contracts. Those contracts were performed, or at least substantially performed, with deliveries made. And therefore, as this Court held in the 2003 decision, the appropriate remedy when there's been a breach is an equitable price adjustment. And it's called price adjustment because there have been goods delivered. Here, when there have been no goods delivered, and the government has properly terminated for convenience, then the T for C clause kicks in, and that allows a contractor to recover its incurred cost of performance up to the time of termination. But in High Shear, there was an equitable adjustment on the goods delivered, but there was also an award, and this Court said the Federal Claims Court has discretion over this, of unabsorbed overhead on the stuff not delivered, also. So, I'm just trying to reconcile your statement that there has to be government-caused delay with there didn't seem to be any evidence of government-caused delay in High Shear, and the fact that they did award unabsorbed overhead. In High Shear, there was no termination for convenience, and there were goods delivered. And the distinction of whether there were goods delivered under the contract or not is the distinction this Court made in the applied case. I agree with you completely. And in High Shear, there was a jury. It was a complicated award in High Shear. It was a very complicated methodology that that Court entertained in order to come to an award. It was a jury-verdict-style award, and it's not clear whether there was delay or not. Let me ask you one more question, though. See, you're hanging your hat on the fact that there was some performance in High Shear, some delivery. And I agree with you. I think that's exactly the basis upon which High Shear distinguished. Here's my concern. If Applied had delivered one cylinder to the government, does that mean under High Shear suddenly they're entitled to all of the unabsorbed overhead on the other 90,000 they didn't deliver? But the fact that they simply didn't get one over there quick enough before the whole thing was terminated means they're not entitled to the unabsorbed overhead on all. I mean, there's no question the Board found below they were in process of performance as a finding of fact. So I struggle with hanging the whole thing on whether or not one item was actually delivered, which seems to be the distinction that you're taking from High Shear. That's the distinction that this Court emphasized in its Applied decision, and that's also the distinction that this Court stated in the High Shear decision when it discussed Applied. So twice in the course of one year, 2003 through 2004, this Court made that all-important distinction. Now, perhaps, hypothetically, if Applied had made one cylinder and delivered one cylinder, the unit price of that cylinder could have been adjusted. And they could have possibly also under High Shear then gotten unabsorbed overhead, is that right? Perhaps, pertaining to that one item, but not for the rest of it. See, it's not clear in High Shear that they got fixed overhead for the entire contract or what exactly they got it. I thought it was for undelivered items, though. This is very important, so if I'm wrong about this, I definitely want you to let me know. I thought that the award of unabsorbed overhead in High Shear was for undelivered items. Not for anything that was outside the government estimate. But again, this Court made the distinction in both cases that if a contractor hasn't made a delivery, and also another distinction is that, and the Court didn't make a point of this so much, but in High Shear there was no termination for convenience at all. That was a strict breach case. It's very different than in this case. There was a breach, but the contractor began for permits, and then there was a valid termination for convenience. And normally in a termination for convenience, where it's properly invoked, which is the case here, the contractor normally under the FAR, this is a regulation, they get cost incurred up to the time of termination. There is no reason to go outside that in this case, because it fits very neatly within the regulations and what was intended. It fits neatly within the existing case law. And the bottom line is that applied wants unabsorbed overhead. And again, the well-settled case law is that for any contractor to get that, whether it's term damages or T4C cost, whatever the umbrella is that they would get that under, before any contractor can get unabsorbed overhead, they must show that their government caused delay and it was of uncertain duration. Here applied alleges that neither occurred here, or they have not alleged that either has occurred here. So strictly speaking, their claim is for one thing. Despite language from appellant's counsel that they have something that remains unsettled somehow before the board, their claim after the remand was for one thing, and that was for unabsorbed overhead. They wanted $1.1 million for one thing, unabsorbed overhead. And that's their complaint, their claim of November 20, 2003. So you say that it wasn't settled because it was, what, tacitly resolved through the other settlement? No, Your Honor. Appellant's counsel seemed to indicate that the board was remiss in not addressing something in its decision. That's not in their briefing. And the board's decision is clear that it was addressing one thing, and that was the appellant's applied November 20, 2003 claim in response to this court's remand back to the board. After the remand, appellants submitted a claim for unabsorbed overhead, and that amount that they sought was $1.1 million. They didn't ask for anything else. They didn't say, oh, we have something else unsettled from 95 back here that we're including. Nothing else, just one claim for one thing in that one amount. The board decided that in its 2006 decision. They decided this November 20, 2003 claim. There's nothing else outstanding. And if there had been, they should have brought it up in their brief, and nothing was mentioned in the brief. The board decided this claim. It properly applied not only the guidance that this court gave it, very strict guidance, very sensible guidance, straightforward. Also, in accordance with existing case law, they applied the Nikon case properly to determine that no, applied was not deserving of unabsorbed overhead. Okay. I think we have the arguments. Are there any more questions? Anything else you must tell us? I think I'm okay, Your Honor. Thank you. Okay. Thank you, Ms. Moore. Mr. Jones. Thank you, Your Honor. Judge Moore, to answer your question, there was no delay claimed or involved in the high share case. The language you are looking for is at 53, claims reporter, 444. This court finds that the plaintiff is entitled to $14,000 odd, etc. for fixed overhead costs related to unordered quantities for the base year and two option years. There was a recovery of unrecouped burden costs relating to unordered quantities. That's what our claim is for. Thank you, counsel. That does clarify it. What about her comment, though, or pointing out the distinction that high share is not a case in which there was any termination for convenience? I think, Your Honor, that the correct answer to that, and it's, I believe, inferred argument of the government that the termination for convenience which occurred after the breach and after the claim somehow limits the contractor's damages. Now, someday, in some case, this court may face the issue, and it's a fairly stated issue. If the government misestimates its needs for a requirements contract, awards the contract, and thereby breaches it, and then finds out thereafter that it blew the estimate, and then terminates the convenience and limits its damages, it's kind of the honorable thing to do. We lured you into this contract based on misrepresentation, so here's a T for C. You can get reimbursement for whatever you have in the contract. That might be a good question for this court someday, but not this case, not this day. And there's a reason for that in the facts of this case. The reason for that is in this case, as the board found, the government knew before it awarded the contract that its estimate was bad, that it wouldn't buy anything close to that. In Salisbury v. United States, 905, Fed 2nd, 1518 and 1521 discusses this court's claims decision in Torcello, and says, Torcello stands for the unremarkable proposition that when the government contracts knowing full well that it will not honor the contract, it cannot avoid a breach claim by a verdict of T for C. That's what happened in this case. Okay. Thank you, Mr. Jones and Ms. Moore. Case is taken under submission. Thank you. All rise.